[L. A. No. 19346. In Bank. June 26, 1946.]

AUSTIN P. SUTTER et al., Appellants, v. GENERAL PE-
TROLEUM CORPORATION (a Corporation) et al.,
Respondents.

Haight, Trippet & Syvertson for Appellants.

Martin J. Weil, J. M. Jessen and Mortimer Kline for Respondents.

CARTER, J.—After the introduction of evidence by plaintiffs the trial court sustained the previously made objection of defendants to the introduction of any evidence by plaintiffs on the ground that none of the purported causes of action stated facts sufficient to constitute a cause of action. Judgment of dismissal was entered.

The first of the remaining twenty-seven causes of action (three of the plaintiffs having dismissed their actions) is by plaintiff Sutter. Each of the remaining twenty-six causes of action is by one of the remaining plaintiffs. The defendants (the action as to six of them was dismissed) are the General Petroleum Corporation, hereinafter referred to as the corporation, Pauson Bros., Inc., a corporation, hereinafter referred to as Pauson Brothers, and J. W. Pauson. According to the first cause of action, prior to January 12, 1942, Rincon Oil Company, a corporation, hereinafter referred to as Rincon Company, held an oil and gas lease as lessee from the State of California, of certain tide and submerged lands in Ventura County consisting of about 160 acres. The stock in Rincon Company was, prior to February 15, 1939, owned by defendants Pauson and Pauson Brothers and the other defendants as to whom the action was dismissed. In 1932 Rincon Com-

pany constructed a steel island and derrick off shore and on the leased property for drilling and prospecting for oil. Tanks and drilling equipment were maintained thereon by the corporation and Rincon Company. In November, 1938, defendants, knowing that plaintiff Sutter was interested in projects for the development of oil land in the same area as the leased lands, entered into "a common plan and conspiracy, for the purpose, by fraudulent means, of persuading and inducing plaintiff [Sutter] to abandon the above mentioned project and to organize a corporation for the purpose of taking over from said Rincon Oil Company said State Oil and Gas Lease No. 82 and purchasing said steel structure and derrick, together with the appurtenances, machinery and equipment situated thereupon, and drilling an oil well or wells upon said property." That plan was executed by false representations made by defendants to Sutter, concealment of material facts concerning the steel island, and making promises they did not intend to perform. The alleged fraud consisted of the following: In January of 1939, defendants represented that the steel island was constructed according to plans and specifications exhibited to Sutter. They asserted numerous times that the personnel of the corporation, being peculiarly and especially conversant with such structures, had inspected it and it was in all respects "good, safe and sound," and properly designed for oil drilling equipment. Prior to the time these representations were made a portion of the steel structure had collapsed unknown to Sutter. It had been repaired, but defendants knew of weaknesses in the structure and concealed them from Sutter. In January, 1939, the corporation promised Sutter that it would rent to the proposed corporation to be organized by Sutter, its drilling equipment on the steel island at $75 per day of actual use, purchase the oil produced, and supply water and expert advice for operations. Without the use of such equipment the development of the field would not be possible. Sutter charges that the statements were untrue and the promises were made with no intent to perform. The representations and promises were made "for the purpose of inducing plaintiff to participate in the organization of and in financing a corporation for the purpose of taking over said lease, purchasing said steel island structure, together with the appurtenances, machinery and equipment situated thereon and to drill one or more wells upon said property." In reliance thereon Sutter was induced to and

did form a corporation, named Rincon Development Company, hereinafter referred to as Development Company. In the early part of 1939 the Development Company took possession of the property and commenced drilling upon the steel island, and also entered into contracts with the corporation and Rincon Company for the purchase of the island and use of the equipment. Defendants were unable, contrary to their promise, to obtain the consent of the state to an assignment to the Development Company of the lease of the tide lands held by the Rincon Company. As a result the Development Company was unable to proceed with drilling operations or issue or sell its stock. The impassé being called to defendants' attention they agreed to and did deliver all of the stock of the Rincon Company to be reissued by that company to the subscribers of stock of the Development Company. Certain assets of Rincon Company were to be transferred to Pauson Brothers and by them resold to Rincon Company under the same arrangements theretofore existing between that company and Development Company. The corporation was likewise to make similar arrangements. The foregoing arrangement was consummated. Thereafter, the corporation refused to supply expert assistance and water, rent the drilling equipment, or agree to purchase oil from Rincon Company, and otherwise repudiated its representations and promises. The steel island collapsed and the state cancelled the lease. For damages Sutter claims that he was ''induced to and did invest . . . $33,440.00 in said venture and in the stock of the said Rincon Oil Company. By reason of the collapse of the said structure and the cancellation of the said lease, as aforesaid, plaintiff's investment in said property and in the stock of said corporation has been rendered worthless and of no value, all to plaintiff's damage in the sum of . . . $33,440.00.

''. . . [and] plaintiff was induced to and did devote all of his time and attention, for a period of eighteen (18) months from and after on or about January 8, 1939, to the promotion and development of said property and to the drilling and operation of said well. Plaintiff is an oil operator of many years' experience and the reasonable value of said services is One Thousand Dollars ($1,000) per month. Plaintiff received no compensation for said services, but expected and intended to be compensated therefor out of profits to said corporation to be brought about by his efforts, but by reason

of said false and fraudulent statements, representations and promises on the part of defendants, plaintiff was prevented from obtaining or realizing and did not obtain or realize any compensation whatever for said services, all to plaintiff's damage in the sum of . . . $18,000.00.''

In the other twenty-six causes of action each of the remaining plaintiffs makes substantially the same allegations as Sutter, and claims, for illustration in the second cause of action: ''During the month of November, 1938, for the purpose of selling and disposing of that certain steel structure, derrick, machinery and equipment and of relieving themselves of liability under State of California Oil and Gas Lease No. 82, all as described in paragraphs II and III of the complaint of plaintiff Austin P. Sutter herein, defendants and each of them entered into a common plan and conspiracy to persuade and induce plaintiff, by fraudulent means, to subscribe to and agree to purchase and to purchase stock in a corporation to be organized by plaintiff Sutter, which said corporation was to be organized for the purpose of purchasing said structure, derrick, machinery and equipment and to assume and take over said State of California Oil and Gas Lease No. 82. . . . In reliance upon the false and fraudulent representations, statements and promises, and each and all of them, made by defendants, as hereinabove alleged, plaintiff [Banks] was induced to and did invest the sum of . . . $500.00 in said venture and in the stock of said Rincon Oil Company, but by reason of the collapse of said structure and the cancellation of said lease, as aforesaid, plaintiff's investment in said property and in the stock of said corporation has been rendered worthless and of no value, all to plaintiff's damage in the sum of . . . $500.00.''

In support of the trial court's conclusion that no cause of action was stated, defendants contend that there are not sufficient allegations of any injury suffered by plaintiffs, the main complaint being that the only injury suffered was by the Development Company and its successor, Rincon Company, rather than plaintiffs, and that the causes of action as stated are not derivative or representative in which the stockholders are suing in behalf of the corporation. They contend that the damages for loss of time claimed by plaintiff Sutter are not recoverable. And finally, that as to all the plaintiffs, there are no allegations showing damages suffered by them.

Plaintiffs do not purport to state a derivative action.

█ Generally, a stockholder may not maintain an action in his own behalf for a wrong done by a third person to the corporation on the theory that such wrong devalued his stock and the stock of the other shareholders, for such an action would authorize multitudinous litigation and ignore the corporate entity. █ Under proper circumstances a stockholder may bring a representative action or derivative action on behalf of the corporation. (*Klopstock* v. *Superior Court*, 17 Cal.2d 13 [108 P.2d 906, 135 A.L.R. 318]; *Nessbit* v. *Superior Court*, 214 Cal. 1 [3 P.2d 558]; *Difani* v. *Riverside County Oil Co.*, 201 Cal. 210 [256 P. 210]; *Gorham* v. *Gilson*, 28 Cal. 479; 6A Cal.Jur. § 456, et seq.) But "If the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly, it is an individual action. . . . The action is derivative, i. e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets." (Fletcher Cyc. Corps. (perm. ed.) § 5911.) (See *Shenberg* v. *De Garmo*, 61 Cal. App.2d 326 [143 P.2d 74].) █ And a stockholder may sue as an individual where he is directly and individually injured although the corporation may also have a cause of action for the same wrong. (*Coronado Development Corp.* v. *Millikin*, 175 Misc. 1 [22 N.Y.S.2d 670]; *Hammer* v. *Werner*, 239 App.Div. 38 [265 N.Y.S. 172]; *Witherbee* v. *Bowles*, 201 N.Y. 427 [95 N.E. 27]; *Von Au* v. *Magenheimer*, 110 N.Y.S. 629, Aff'd , 196 N.Y. 510 [89 N.E. 1114]; *Stinnett* v. *Paramount-Famous Lasky Corp.* (Tex.Com.App.), 37 S.W. 2d 145; *White* v. *First Nat. Bank*, 252 Pa. 205 [97 A. 403]; *Brachman* v. *Hyman*, 298 Mich. 344 [299 N.W. 101]; 18 C.J.S., Corporations, § 559.)

█ In the instant case the essence of plaintiff Sutter's charge is that by reason of the fraudulent representations of defendants, he was induced to do several things, namely, abandon his own oil development projects, devote his time to the project whereby the steel island and other facilities would be used and *to form and invest in a corporation* (the Development Company) to carry on the new oil production project. The formation of the corporation and investing therein was

only one of the several things which he did in reliance upon defendants' representations. The fraud was committed by defendants, and plaintiff Sutter took steps in reliance upon the misrepresentations including the formation of the Development Company *before that company was formed.* The tort was completed except as to the injury suffered. It is true that the promises made by defendants with no intent to perform were to run also to the Development Company when formed and that company and its successor Rincon Company were to use the defective island. In that fashion the defect in the island and the failure to perform the promises injured the Development Company and Rincon Company but there was also a direct individual injury to plaintiff Sutter, and, as we have seen, the dual nature of the injury does not necessarily preclude an action by the stockholder as an individual. Defendants, by their promises and representations induced plaintiff to form the corporation and invest his money therein, and then breached their duty of honest dealing with him. By way of damages plaintiff Sutter asserts that because of the false representations he invested $33,440 in the venture and the Rincon Company, and that as the result of the fraud of defendants the stock in the Rincon Company became valueless.

While ordinarily a stockholder may not sue individually for impairment of a corporation's assets rendering the stock worthless, yet here that result is merely one method of ascertaining the amount of damages suffered by Sutter. He lost his investment which was represented by the stock, and its reduction in value would be the extent of his loss. The damages all flowed from the tort of defendants.

Defendants urge that the property of the Development Company and Rincon Company suffered the injury, that is, their business was injured because of the collapse of the structure (steel island) which made oil operations impossible. From that it is reasoned that the only cause of action would be in the Rincon Company, relying upon authorities involving an injury to the assets of a corporation which is actionable by the corporation and not the stockholders individually. (See *Anderson* v. *Derrick*, 220 Cal. 770 [32 P.2d 1078]; *Difani* v. *Riverside County Oil Co.*, 201 Cal. 210 [256 P. 210]; *Shenberg* v. *DeGarmo*, 61 Cal.App.2d 326 [143 P.2d 74]; 6A Cal. Jur. § 456.) It is true that the corporations suffered injury, inasmuch as they were conducting the oil drilling operations and had contracts for the use of the structure, but the fraud

was practiced on Sutter in the first instance and he was induced to form the corporation (Development Company) and invest his money by reason of that fraud. When the fraud finally came to light and the falsity of the representations manifested itself in the collapse of the structure (steel island), the injury from that fraud occurred. The injury resulted from the formation of a corporation and investments therein to carry on a project that could not be conducted because of the fraud. The whole series of events up to and including the injury was a part and parcel of the fraud practiced on plaintiff. Particular reliance is placed upon *American Trust Co.* v. *California Western States Life Insurance Co.*, 15 Cal.2d 42 [98 P.2d 497], and *Nighbert* v. *First National Bank of Bakersfield*, 26 Cal.App.2d 624 [79 P.2d 1105]. In the Nighbert case the charges of fraud were against the officers of the corporation in buying property for more than its value with the plan that it would later be taken back by the purchaser upon default in the payments and that the corporation's assets were dissipated by the directors. The court pointed out that "any fraud in connection with the purchase of these lands by the corporation was made possible by the acts of the directors of that corporation" and then stated the rule that negligence or mismanagement of the officers of a corporation is not a basis for an individual suit by a stockholder. Moreover, it was stated that "the allegation is that these plaintiffs were induced to purchase stock by false representations as to the value thereof without stating what, if any, representations were made and there are neither allegations to the effect that they were induced to purchase stock by the general acts of the defendants nor allegations showing what the stock was actually worth, nor what they received therefrom." In the American Trust Company case the fraud clearly related to and affected the assets of the corporation. There was no fraudulent scheme to induce the formation of and investment in a corporation. The fraud there was in incurring by the officers of a corporation, liability on the part of the corporation; and the misrepresentations were for the purpose of achieving a transfer of the assets of the corporation to induce action by the corporation. Here the representations were to induce Sutter to organize and finance the Development Company.

The pleading of the damages suffered could have been more precise in its causal aspects. It was alleged that by reason of the collapse of the steel island plaintiff's investments and

the stock in Rincon Company became worthless. Preceding that, however, is the charge of fraud with regard to 's condition and the inducement of plaintiff to form the corporation and invest the stated sum therein.

The injury claimed by the other twenty-six plaintiffs is substantially the same as that of Sutter. All of the allegations of fraud were incorporated by reference. They claimed that, for the purpose of selling the defective steel island and escaping the obligations under the oil lease from the state, defendants entered into a plan to fraudulently induce subscriptions to the stock in the to be organized Development Company. In reliance on the defendants' fraudulent conduct plaintiffs invested a certain amount in the property and stock of the Development Company and the investment and stock became worthless. In other words, defendants fraudulently represented what they would do for such corporation and thereby caused plaintiffs to subscribe to stock therein. Again it is true that the corporation suffered injury but plaintiffs individually were wronged and were injured by defendants' action and the comments made in regard to Sutter's cause of action are applicable.

█ Defendants further urge that plaintiffs have not pleaded properly any damages in that there is no allegation of the value of the property (stock in the Rincon Company) at the time of its purchase in conformity with the statute reading: "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction." (Civ. Code, § 3343.) It is alleged that plaintiffs invested a stated sum in the venture and stock of Rincon Company and that the stock and investment became valueless because of the cancellation of the lease and collapse of the steel island. Assuming section 3343 is applicable, at least as against a general demurrer, these allegations are sufficient. It may be that the complaint indicates that the stock had some value at the time the representations were made and the money invested, still where the fraud consists, as it does here, of the false representations as to the condition of the steel island and the availability of the lease, the consequences of the fraud—manifestation of the injury to plaintiff—did not occur until the collapse of the steel structure and the loss of the

lease. Certainly it cannot be doubted that there is a sufficient showing of injury to plaintiffs. Whether the precise and correct measure of damages was pleaded is not important in the face of a general demurrer. *Dyer* v. *Hunter,* 133 Cal.App. 267 [23 P.2d 1049], is not contrary to these views. The court there merely stated that subsequent events which had no connection with the fraud (bankruptcy) did not supply a defect in the pleadings and proof with reference to the value of the stock.

With regard to plaintiff Sutter, defendants urge that his claim for $18,000 damages is improper. He alleged, as heretofore stated, that he was induced by defendants' fraud to expend his efforts and time in developing the property and drilling operations; that the reasonable value of his services during the time he was engaged in developing and operating the project which failed because of defendants' fraud, was a certain amount and that he expected to be reimbursed for his efforts from the profits of the project. Defendants assert that he cannot be allowed such a recovery because the possible realization of profits is speculative and Sutter does not allege that he had any agreement with either the Development Company or Rincon Company to pay him for his services. The general rule with reference to damages is stated: ''For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.'' (Civ. Code, § 3333.) And ''One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.'' (Civ. Code, § 1709.) In the instant case it was by reason of defendants' fraud that Sutter expended his time and efforts on the project. Hence the loss of that time and effort was proximately caused by the fraud. In *Rowland* v. *Columbia Mining, Water & Power Co. of California,* 2 Cal.App.2d 410 [38 P.2d 418], plaintiffs were fraudulently induced to enter into a lease to mine property and were permitted to recover the salary they would have earned if they had not given up their positions to engage in the venture. It is immaterial that he did not have an agreement with the Development Company or Rincon Company to compensate him for his services. He claimed the amount as the reasonable value of his services and it was by

reason of the fraud that his efforts and time were expended. Nor is it important that he claims that he "expected" to be compensated "out of the profits to said corporation." That is not sufficient basis for concluding that that was the only source from which he was to be paid or that the profits are the sole basis for computing the compensation. He pleaded the reasonable value of his services and the loss of time was the proximate result of the fraud. But even if the loss of the time is to be measured by the profits from the enterprise there is no such uncertainty that precludes the consideration of profits. It is a matter of proof—that is, whether the evidence establishes the claim that is important. The oil well had been in operation some time and it may well be that proof of the profits could be made. (See *Steelduct Co.* v. *Henger-Seltzer Co.*, 26 Cal.2d 634 [160 P.2d 804]; *Continental Car-Na-Var Corp.* v. *Moseley*, 24 Cal.2d 104 [148 P.2d 9]; *Caminetti* v. *Pacific Mut. Life Ins. Co.*, 23 Cal.2d 94 [142 P.2d 741].)

Defendants rely upon *Ramsey* v. *Penry,* 53 Cal.App.2d 773 [128 P.2d 399], but in that case the chief issue was whether or not the evidence was sufficient to establish prospective profits, a matter with which we are not concerned, and the sole source of the payment to plaintiffs for their efforts was from the profits. Here we do not have the evidence before us and Sutter sets forth the reasonable value of his time which he spent in pursuing the course induced by defendants' fraud.

The judgment is reversed.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.