956 F.2d 1168
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Harry SHULER, Suzanne Shuler, New H.S. Industries, Inc., a
California corporation, and California Design Group, Inc., a
California corporation dba Paragon West Knitting Mills,
Inc., Plaintiffs/Appellants,
v.
WALTER E. HELLER WESTERN INC., a California corporation, and
Does 1-10, Inclusive, Defendants/Appellees.
 Nos. 89-56218, 89-56272.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 9, 1991.
Decided March 3, 1992.
 
 Before FLETCHER, D.W. NELSON and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Appellant California Design Group, Inc. ("Cal Design") and its sole shareholders Harry and Suzanne Shuler and New H.S. Industries, Inc. ("the Shulers" and "New H.S.") entered into what is known as a "factoring agreement" with appellee Heller Western, Inc. ("Heller"). Under this agreement, Cal Design sold its rights to receive future payments from its customers ("accounts receivable") to Heller, who agreed to collect those payments and assume the credit risk of accounts it had pre-approved ("approved accounts"). For assuming this risk, Heller took a percentage of the total receivables. After Heller refused to pay on a $1.3 million account it had approved, the Shulers (and later Cal Design) brought this action for breach of contract, breach of third-party beneficiary contract, fraud, tortious breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and intentional infliction of emotional distress. The district court granted Heller's motion to dismiss in its entirety, and this appeal followed.
 
 
 3
 For the reasons that follow, we reverse the dismissal of Cal Design's breach of contract and fraud claims, and the Shulers' fraud claim. We affirm the dismissal of the remaining claims.
 
 STANDARD OF REVIEW
 
 4
 The validity of a dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(6) is a question of law and is reviewed de novo. Kruso v. Int'l Tel. & Tel., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 110 S.Ct. 3217 (1990). In reviewing a dismissal, the factual allegations of the plaintiff's complaint are taken as true and construed in the light most favorable to the nonmoving party. Baker v. McNeil Island, 859 F.2d 124, 127 (9th Cir.1988).[1]
 
 
 5
 If an allegation is really a legal conclusion, and is merely cast as a factual allegation, however, it will not be presumed true. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981). Under California law the interpretation of a contract is a question of law. Parsons v. Bristol Development, 402 P.2d 839, 842 (Cal.1965).
 
 
 6
 Finally, the district court's decision may be affirmed on any grounds, whether or not the district court relied on those grounds. Kruso, 872 F.2d at 1421.
 
 DISCUSSION
 A. Jurisdiction
 
 7
 Jurisdiction is predicated on diversity of citizenship. 28 U.S.C. § 1332. While both Cal Design and Heller were California corporations when the contract was signed, Heller was merged into another firm in 1985. Thereafter, and when the complaint was filed, it was a Delaware corporation with its principal place of business in Illinois.
 
 B. Timely Filing
 
 8
 Heller contends that the motion for reconsideration (which tolls the time for filing a notice of appeal) was untimely because it was not filed until 11 days after entry of judgment, on August 15. The motion was served on Heller on August 14, ten days after the judgment was entered (August 4). Fed.R.Civ.P. 59(b) requires only that such a motion be served within 10 days of the entry of judgment. Thus, the motion was timely.
 
 C. Standing
 
 9
 Heller challenges the standing of New H.S. and the Shulers to bring their claims for fraud, tortious breach of contract, breach of the implied covenant, and breach of fiduciary duty. The general rule in both California and federal court is that a shareholder cannot bring a suit alleging personal injury resulting from a wrong to the corporation. Shell Petroleum N.V. v. Graves, 709 F.2d 593, 595 (9th Cir.), cert. denied, 464 U.S. 1012 (1983); Sutter v. General Petroleum Corp., 170 P.2d 898, 901 (Cal.1946). Any suit by a shareholder must allege direct and individual injury to the plaintiff, and not merely to the corporation. Id.
 
 
 10
 The Complaint nowhere asserts any direct, personal injury to New H.S. New H.S. has been injured only because it "lost its investment in Cal Design." E.R. 9, at p 21. Appellants do not allege that Heller was in a special relationship with New H.S., or that Heller ever made misrepresentations directly to New H.S. As a result, under the rules noted above, New H.S. lacks standing to bring any of the claims asserted here. The district court was therefore correct in dismissing its claims.
 
 
 11
 The Shulers also lack standing to bring their claims for tortious breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty. Each of these claims requires a "special relationship" between the Shulers and Heller. Even if that relationship exists between Cal Design and Heller, it does not exist with the Shulers. The Shulers' only direct connection with Heller is that they agreed personally to guarantee Cal Design's obligations to Heller. It is well-established that "any harm to [plaintiffs] due to their status as guarantors of the bonds given by the corporation is also derivative of the harm to the corporation. Thus, this status does not give [plaintiffs] standing." Sparling v. Hoffman Constr. Co., 864 F.2d 635, 640-41 (9th Cir.1988); accord Sherman v. British Leyland Motors, 601 F.2d 429, 439 (9th Cir.1979) (plaintiff's status as guarantor did not confer standing; applying California law).
 
 
 12
 By contrast, the Shulers do allege in the Complaint that Heller made fraudulent representations to them directly, thus causing them personally to guarantee Cal Design's obligations to Heller. The Shulers have standing to sue for fraudulent representations made directly to them by Heller, and which induced them to act in their personal capacity. Sutter, 170 P.2d at 901-02.[2]
 
 
 13
 We affirm the dismissal of all of New H.S.'s claims and the Shulers' claims for tortious breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty, for lack of standing. Plaintiffs have standing to bring all other claims.
 
 D. Judicial Estoppel
 
 14
 The doctrine of judicial estoppel is invoked to preclude a party from abusing the judicial process by taking inconsistent positions in litigation. The purposes of judicial estoppel are to preserve the integrity of the judiciary and to prevent a litigant from playing "fast and loose" with the courts. Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.1990), cert. denied, 111 S.Ct. 2915 (1991) (citing Religious Technology Center v. Scott, 869 F.2d 1306, 1311 (9th Cir.1989) (Hall, J., dissenting)).[3] Heller suggests that this Court should apply judicial estoppel to bar Cal Design's claims against Heller because Cal Design was not forthright in disclosing the instant action to the bankruptcy court.[4]
 
 
 15
 This Circuit has never delineated the precise scope of judicial estoppel.[5] Heller cites three cases from outside the Circuit which it says compel the conclusion that debtors who fail to disclose potential claims in bankruptcy proceedings are barred by judicial estoppel from bringing those claims. See Oneida Motor Freight v. United Jersey Bank, 848 F.2d 414, 416-20 (3rd Cir.), cert. denied, 488 U.S. 967 (1988); In re Hoffman, 99 B.R. 929, 935-36 (N.D.Iowa 1989); Galerie des Monnaies of Geneva, 62 B.R. 224, 225-26 (S.D.N.Y.1986).
 
 
 16
 In all three cases, though, there had been no disclosure of the potential claim to the bankruptcy court. Here, Cal Design did disclose "a possible lender liability claim against a former factor." Heller repeatedly asserts that this disclosure is insufficient because Cal Design had already filed this action. This assertion is false. The Shulers filed a complaint on August 5, 1988, asserting injury only to themselves and asserting no claims on behalf of Cal Design. This was the only action pending when the Final Reorganization Plan was approved by the bankruptcy court on October 18, 1988. It was not until the First Amended Complaint was filed on June 2, 1989, that Cal Design asserted any claim against Heller. Thus, Cal Design's disclosure was an accurate (if rather vague) description of the state of affairs at the time. Oneida, Galerie and Hoffman, which are premised on the complete absence of disclosure (or the taking of an inconsistent position), are therefore inapplicable.
 
 
 17
 While Cal Design's disclosure in this case was certainly not complete, there was some disclosure. In order to decide whether this disclosure was adequate, this Court would have to determine whether Cal Design's disclosure was sufficiently specific and whether Cal Design intended to deceive its creditors. The parties spend a great deal of effort disputing these facts, and the answers are simply not apparent from the face of the Complaint. The adequacy of Cal Design's disclosure is an issue of fact which cannot be resolved on a motion to dismiss. Given the procedural posture of this case, therefore, we cannot invoke judicial estoppel to bar Cal Design's claims.
 
 E. The Merits
 Breach of Contract
 
 18
 Cal Design's agreement with Heller provides that Heller will "assume the credit risk" of approved accounts. E.R. 2, p 2. The Complaint alleges that Heller refused "to make loans and advances to Cal Design" and failed "to honor its agreement to guarantee the credit of approved accounts." E.R. 9, p 12. Specifically, the Complaint alleges that Heller failed to pay for receivables from the approved account of F.A.M.E., Inc. Taken as true, this allegation certainly demonstrates a breach of the contract to pay for such approved receivables. The district court therefore erred in dismissing Cal Design's breach of contract claim.[6]
 
 Third-Party Beneficiary Contract
 
 19
 Cal.Civil Code § 1559 provides that "[a] contract, made expressly for the benefit of a third person, may be enforced by him." (emphasis added). California courts have concluded that whether a plaintiff is a third-party beneficiary to a contract depends on "whether an intent to so benefit the third person appears from the terms of the agreement." Schonfeld v. Vallejo, 123 Cal.Rptr. 669, 682 (Cal.Ct.App.1975). In discerning such an intent, the court may look beyond the four corners of the agreement, but the beneficiary must be either named in the agreement or "a member of a class referred to and identified in it." Sepulveda v. Pacific Maritime Ass'n, 878 F.2d 1137, 1139 (9th Cir.) (applying California law), cert. denied, 493 U.S. 1002 (1989).
 
 
 20
 The Shulers allege that Heller expressly recognized them as beneficiaries to the contract between Heller and Cal Design. They cite as "evidence" of this recognition the fact that Heller required the Shulers to guarantee personally Cal Design's performance. See E.R. 9, p 9 (alleging that Heller required the guaranty both because the Shulers were 100% shareholders of Cal Design and because they were intended beneficiaries of the agreement). The fact that Heller required a guarantee from the Shulers, however, is simply not evidence that the Shulers were intended to benefit from the contract in their personal capacity.
 
 
 21
 California and Ninth Circuit case law has focused on whether plaintiffs or their class have been identified in the agreement. In Sherman v. British Leyland Motors, 601 F.2d 429, 439-40 & n. 13 (9th Cir.1979), Sherman was the sole stockholder of a contracting party, and in addition had personally guaranteed the party's obligations, just as the Shulers have done here. The Ninth Circuit applied California law to prevent Sherman from bringing claims as a third party beneficiary under the contract because there was no intent to benefit him in his individual (rather than shareholder) capacity. Similarly, California courts have refused to allow a plaintiff who loaned money to a contracting party on the basis of that party's expected return on the contract to sue to enforce the contract. Sheppard v. Banner Food Prods., 178 P.2d 455, 457 (Cal.Ct.App.1947). These cases are dispositive of this claim. The contract reveals (and the Shulers have presented) no reason for believing that the parties intended to benefit the Shulers in their individual capacity, rather than as shareholders. Absent such an intent, the Shulers cannot maintain a third-party beneficiary claim.[7]
 
 
 22
 Tortious Breach and Breach of Implied Covenant
 
 
 23
 Under current California law, a breach of contract will give rise to tort liability only when a "special relationship" exists between the parties to the contract. Foley v. Interactive Data Corp., 765 P.2d 373, 396 (Cal.1988).[8] California courts have cut back drastically on the availability of such tort claims in recent years, finding no special relationship to exist in commercial contracts, see Martin v. U-Haul, 251 Cal.Rptr. 17, 21 (Cal.Ct.App.1988), employment contracts, see Foley, 765 P.2d at 397, or depositor or lender contracts, see Price v. Wells Fargo Bank, 261 Cal.Rptr. 735, 741 (Cal.Ct.App.1989). Despite recent changes in California law, however, tortious breach of an insurance contract is still a valid cause of action. See Copesky v. Superior Court, 280 Cal.Rptr. 338, 345 (Cal.Ct.App.1991) ("there is only one category of business transactions which definitionally is amenable to tort actions for contract breaches, and that is insurance.").
 
 
 24
 Cal Design claims that Heller is an insurer because it agreed to "assume the credit risk" of approved accounts. Heller denies that the factoring agreement made it an insurer. Instead, it says that it bought Cal Design's accounts receivable outright. The contract terms support Heller's interpretation. The contract provides that Cal Design "agree[s] to offer to sell, transfer and assign to [Heller], as absolute owner, each and all" of its accounts receivable. (Emphasis added). The contract further provides that "we [Heller] will assume the credit risk and shall have no recourse against you for non payment [sic] of any Approved Account." Read in the context of the agreement, this provision simply reinforces the notion that Heller is buying the accounts receivable outright, and cannot recover from Cal Design if those accounts are in default.
 
 
 25
 Heller is not an insurer, but merely a purchaser in an ordinary contractual relationship with Cal Design. As such, it is not liable under California law for tortious breach of contract.
 
 Breach of Fiduciary Duty
 
 26
 Cal Design also alleges a breach of fiduciary duty because of Heller's alleged role as a banker under the Agreement. Cal Design relies on cases finding banks to have special relationship with depositors, and on a 1937 California case holding that a "factor" is a fiduciary. Bones v. Fusco, 69 P.2d 911, 914 (Cal.Ct.App.1937).
 
 
 27
 Cal Design's argument fails for two reasons. First, the ordinary commercial nature of the Cal Design-Heller contract takes it out of the realm of fiduciary relationships. See Price, 261 Cal.Rptr. at 741. Second, the cases on which Cal Design relies, Barrett v. Bank of America, 229 Cal.Rptr. 16 (Cal.Ct.App.1986) and Commercial Cotton Co. v. United California Bank, 209 Cal.Rptr. 551, 554 (Cal.Ct.App.1985), have been repudiated by the California courts in light of Foley. See, e.g., Price, 261 Cal.Rptr. at 739-41. Even if Heller were a banker rather than a mere purchaser, therefore, there is no special relationship which justifies the imposition of tort liability under California law.
 
 Fraud
 
 28
 Under California law, fraud consists of misrepresentation with knowledge and intent, justifiable reliance, and resulting injury. B. Witkin, 5 Summary of California Law: Torts § 676 (9th ed. 1988). Appellants must plead all of these elements. In federal court, moreover, they must plead them with particularity. Fed.R.Civ.P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally."[9]
 
 
 29
 Applying this particularity requirement, we have held that a plaintiff must plead "times, dates, places" and other details. Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir.1985); see also Miscellaneous Serv. Workers v. Philco-Ford Corp., 661 F.2d 776, 782 (9th Cir.1981) (requiring plaintiff to plead time, place, manner, content, and medium). Specificity is not required, however, in pleading knowledge or intent on the part of the defendants. Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir.1973); see also Gottreich v. San Francisco Inv. Co., 552 F.2d 866, 866-67 (9th Cir.1977) (allegation that defendants knew representations were false is sufficient).
 
 
 30
 Cal Design and the Shulers have pled the factual circumstances surrounding the fraud with particularity. Paragraph 15 of the complaint set forth the individual (Anthony Lopilato) who allegedly made the fraudulent representations, and the date on which they were made. The complaint also sets forth the precise nature of the alleged fraud: that Heller entered into the March 9, 1983 contract without intending to perform fully. Cal Design alleges that Heller "falsely and fraudulently represented to Plaintiffs" that it would honor the contract, and that "when Defendants made these representations to Plaintiff they knew them to be false." Under Walling, this is enough. Plaintiffs there "stated the time, place and nature of the alleged fraudulent activities. The fraud was entering into the ... agreement with only a limited intention of performing. This is a sufficient averment." 476 F.2d at 397 (citation omitted). We therefore reverse the dismissal of the fraud claims.[10]
 
 
 31
 Intentional Infliction of Emotional Distress
 
 
 32
 California courts have recognized that everyone must expect some emotional distress in life. Pitman v. Oakland, 243 Cal.Rptr. 306, 311 (Cal.Ct.App.1988). Conduct causing such distress does not automatically trigger tort liability. Heller's conduct must be "outrageous, ie., beyond all bounds of decency; ordinary rude or insulting behavior is not enough to justify an award of damages." B. Witkin, 5 Summary of California Law: Torts § 404 (9th ed. 1988). Breach of contract, particularly a contract with a third party,[11] simply cannot be so characterized.
 
 
 33
 The Shulers advance two theories to avoid this obvious problem. First, they claim that Heller's requirement that the Shulers sign personal guarantees before Heller would contract with Cal Design constitutes extortion. Extortion requires that Heller have obtained something through "force or fear." Cal.Penal Code § 518. There is no force or fear even remotely alleged here. Second, the Shulers rely on Fletcher v. Western Nat'l Life Ins. Co., 89 Cal.Rptr. 78, 93 (Cal.Ct.App.1970) for the proposition that an insurer who refuses in bad faith to pay claims may be liable for emotional distress. Heller is not an insurer. Even if it were, the insurance company in Fletcher acted with malice, sent false and threatening letters to the insured, sought to force plaintiff to compromise his valid claim, and conceded in court that its conduct was "deplorable and outrageous." Id. at 392. None of these elements is present here. The Shulers' claim for intentional infliction of emotional distress was properly dismissed.
 
 F. Attorney's Fees
 
 34
 Heller cross-appeals pursuant to Cal.Civil Code § 1717. That section provides for the award of attorneys fees to "prevailing parties" based on certain contractual provisions. In light of our disposition of this case, Heller is not currently a prevailing party. On remand, the district court may consider the question again in light of its ultimate disposition of Cal Design's claims.
 
 CONCLUSION
 
 35
 The judgment of the district court is reversed as to its dismissal of Cal Design's causes of action for breach of contract and fraud, and the Shulers' cause of action for fraud. Dismissal of all other causes of action, and dismissal of New H.S. from the complaint, is affirmed. The case is remanded for further proceedings on the remaining causes of action. Parties shall bear their own costs on appeal.
 
 
 36
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Cal Design has submitted to this Court an unfiled Proposed Second Amended Complaint, which it suggests this Court peruse to determine whether Cal Design "could have alleged " facts entitling them to relief. This Court has previously refused to rely on such unfiled Proposed Complaints, see Kruso, 872 F.2d at 1426 n. 12, and we refuse to do so here as well
 
 
 [2]
 Heller does not contest the Shulers' standing to sue for breach of contract as third-party beneficiaries or for intentional infliction of emotional distress. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1319 (9th Cir.1989) (emotional distress to shareholder is individual rather than corporate injury, and plaintiff therefore has standing to sue)
 
 
 [3]
 See also Reynolds v. C.I.R., 861 F.2d 469, 472-73 (6th Cir.1988) (rejecting as dictum Ralph Waldo Emerson's maxim that "a foolish consistency is the hobgoblin of little minds")
 
 
 [4]
 Since the integrity of the judiciary is at stake, we conclude that federal rather than state law governs the application of judicial estoppel in federal court. See Allen v. Zurich Ins. Co., 667 F.2d 1162, 1167 n. 4 (4th Cir.1982); Note, Judicial Estoppel: The Refurbishing of a Judicial Shield, 55 Geo.Wash.L.Rev. 409, 436 (1987)
 
 
 [5]
 See, e.g., Morris v. California, No. 90-56095, slip op. at 13680-81 (9th Cir. Sept. 30, 1991); Milgard Tempering, Inc. v. Selas Corp., 902 F.2d 703, 716-17 (9th Cir.1990); In re Corey, 892 F.2d 829, 835-36 (9th Cir.1989), cert. denied 111 S.Ct. 56 (1990); Stevens Technical Serv. v. SS Brooklyn, 885 F.2d 584, 588-89 (9th Cir.1989); Rockwell Int'l v. Hanford Atomic Metal Trades Council, 851 F.2d 1208, 1210-11 (9th Cir.1988) (all noting splits in authority among other circuits on this issue and refusing to resolve them)
 
 
 [6]
 Heller correctly points out that under the contract, it was not obliged to loan Cal Design money before the due date of the receivables it purchased. However, Heller was clearly obligated under the agreement to pay for those receivables once they came due. The complaint alleges that Heller failed to do so. This is sufficient to state a claim for breach of contract
 
 
 [7]
 While appellants cite Aronowicz v. Nalley's, Inc., 106 Cal.Rptr. 424, 435 (Cal.Ct.App.1972), which might conceivably support a promissory estoppel claim on these facts, neither the complaint nor Appellants' Opening Brief make any such claim
 
 
 [8]
 While it is true that under California law a covenant of good faith and fair dealing is implied in every contract, breach of the covenant results only in ordinary contract damages unless a special relationship is present. See Seaman's Direct Buying Serv. v. Standard Oil Co., 686 P.2d 1158, 1166 (Cal.1984)
 
 
 [9]
 While California substantive law of fraud controls, under Erie the Federal Rules of Civil Procedure govern the way diversity proceedings are conducted in federal court. Hanna v. Plumer, 380 U.S. 460, 471-72 (1965). Federal law therefore governs the sufficiency of a fraud pleading in federal court
 
 
 [10]
 Moore v. Kayport Package Express, 885 F.2d 531, 540 (9th Cir.1989), does not dictate a contrary result. Our statement in that case that a plaintiff must include with her allegations "a statement of the facts on which the belief is founded" applies only to cases of "corporate fraud" in which plaintiffs are unable even to identify the particular representations which were false. Cal Design has no such problem in identifying the fraudulent statements
 
 
 [11]
 The emotional distress claim is asserted only by the Shulers, who were not parties to the contract at issue