Filed 7/31/25  Zaza v. Stojanov CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| PASQUALE ZAZA, | B331228 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. EC064009) |
| v. |  |
| PETER STOJANOV, |  |
| Defendant and Appellant. |  |

Appeal from judgment of the Superior Court of Los Angeles County, Joel L. Lofton, Judge.  Affirmed.

Law Office of Mao Wang, Mao Wang and Matthew T. Surlin for Plaintiff and Appellant.

Kashfian & Kashfian, Ryan D. Kashfian, Robert A. Kashfian; Minta Law Group and Zsofia Nemeth for Defendant and Appellant.

_____

Pasquale Zaza (Zaza) sued Maria Nagy (Nagy)[1] for breach of a March 2001 shareholders agreement establishing the parties' ownership interests (49 percent and 51 percent, respectively) in Gaboratory, Inc. (Gaboratory), a jewelry company. Zaza alleged Nagy breached the agreement by selling Gaboratory jewelry through another company and lying to him about it. Zaza further alleged that, in doing so, Nagy decreased Gaboratory's profits and, by extension, the portion of profits Zaza would have enjoyed as a 49 percent shareholder in Gaboratory.

Following a two-day bench trial, the court issued a statement of decision finding in favor of Zaza on the breach of contract claim and ordering an accounting of Gaboratory's lost profits. Nagy then filed a motion to vacate the court's ruling, arguing for the first time that Zaza's breach of contract claim was derivative, and that Zaza therefore lacked standing. The court agreed with Nagy, vacated its statement of decision, and entered judgment against Zaza.

Zaza now asks us to reverse the judgment. His sole contention on appeal is that he had standing to pursue his breach of contract claim as a direct, individual cause of action. We conclude, however, Zaza's injury—loss of corporate profits—is incidental to harm to Gaboratory, and therefore is derivative. (See *Schrage v. Schrage* (2021) 69 Cal.App.5th 126, 150 (*Schrage*) [where a shareholder's injury is incidental to the corporation, the action is derivative].) Zaza thus lacked standing.

Accordingly, we affirm.

---

[1] After Nagy died in 2017, Zaza named in her stead defendant Peter Stojanov, in his capacity as administrator of Nagy's estate. In the interest of brevity, however, we refer to the responding party on appeal simply as "Nagy."

2

## FACTUAL SUMMARY AND PROCEDURAL HISTORY[2]

In 2015, Zaza filed suit against Nagy and Gaboratory. The operative fourth amended complaint, filed in August 2021, asserted claims for breach of contract and conversion against only Nagy. The complaint further alleged claims for fraud and for an accounting, against both Nagy and Gaboratory.

In support of the claims, Zaza alleged he met Nagy's late husband, jewelry designer Gabor Nagy, in 1992. Zaza further alleged he made a $150,000 investment in Gabor Nagy's jewelry business, Gaboratory, a California corporation,[3] in exchange for a 49 percent ownership stake in the business. Gabor Nagy and Zaza memorialized this arrangement in a one-paragraph written agreement executed on March 24, 1995.

The 1995 agreement provides in full: "Gabor Nagy agrees to give exclusive usage of all of his old designs as well as any future designs to [Gaboratory] for the next [20] years without giving up ownership of the designs. Any merchandizing of any other company or corporation by Gabor Nagy will be done as part of his contribution to the corporation and therefore all profits from designs and manufacturing for any other corporation and company shall go to [Gaboratory]. Pasquale Zaza agrees to place an initial investment of $150,000 to [Gaboratory]. Both parties agree to do exclusively that which is in the best interest of the company."

After Gabor Nagy's death in 1999, his widow, Nagy, began operating Gaboratory. On March 7, 2001, Nagy and Zaza executed a one-page shareholders agreement. The agreement provided it

---

[2] We summarize here only the facts and procedural history relevant to our resolution of this appeal.

[3] Gaboratory filed articles of incorporation with the State of California on April 8, 1994.

was "by and between [Nagy] and [Zaza], comprising all of the shareholders of Gaboratory, Inc., a corporation organized under the laws of the State of California. It further provided Gaboratory "had been authorized to issue a total of one million . . . shares of common stock," that Nagy "shall own 51 [percent] of the common stock," and that Zaza "shall own 49 [percent] of the common stock."

In addition to establishing the ownership percentages, the agreement provided that Nagy and Zaza would (1) represent themselves on Gaboratory's board of directors and would each hold veto power, (2) hire an accountant and an attorney, and (3) "finalize a complete shareholders agreement as well as the corporate bylaws within six months." The agreement further specified that Gaboratory would maintain an account at a particular bank. Finally, the agreement provided: "All trademarks, patents and copyrights, logos and service marks owned by [Zaza] and used in the corporate business, will be licensed by [Zaza] to the corporation for period [*sic*] of 15 years. The corporation agrees to pay [Zaza] the sum of 5,000 dollars for this period of time." The shareholders agreement contained no other terms, and it does not appear the parties ever executed the "complete shareholders agreement" contemplated in the March 2001 agreement.

Zaza alleged that, in 2003, Nagy told him Gaboratory was no longer profitable because people were no longer interested in Gaboratory jewelry. Zaza further alleged that, in 2013, he discovered Nagy had lied to him, and that she had been selling Gaboratory products profitably through a different entity, PE-MA Corporation.

With respect to his claim for breach of contract—the only claim at issue in this appeal—Zaza alleged Nagy's conduct breached the shareholders agreement "by unlawfully exclud[ing] [Zaza] from Gaboratory and conceal[ing] business transactions by using other

4

companies." Zaza alleged "Nagy further breached the contract by converting the trademark 'GABORATORY, INC.,' [Zaza's] property, to her name." (Capitalization omitted.)

Nagy denied Zaza's allegations and filed a cross-complaint against Zaza asserting claims for declaratory relief, breach of contract, unfair business practices, intentional interference with economic relations, breach of fiduciary duty, conversion, and an accounting.

In August 2022, the court conducted a two-day bench trial on the parties' claims. On January 17, 2023, the court issued a statement of decision finding in favor of Zaza on his breach of contract claim. The court concluded Nagy had breached the shareholder agreement by ceasing communications with Zaza and by selling Gaboratory jewelry to a Japanese customer without reporting the sales to Zaza or providing him with any resulting compensation. The court therefore ordered an accounting to determine the profits Nagy made by selling Gaboratory jewelry through other entities during the relevant time frame.

With respect to Zaza's remaining claims for fraud and conversion, however, the court denied relief. The court found Zaza had failed to demonstrate the falsity of Nagy's purportedly fraudulent statements. In addition, the court concluded a "conversion [cause of action] is inapplicable to trademarks." Finally, the court found Nagy had failed to prove the claims in her cross-complaint.

Nagy filed a motion for a new trial and a motion to vacate the judgment arguing, inter alia, Zaza's breach of contract claim was derivative in nature, and he therefore lacked standing to pursue it as a direct cause of action. At the March 13, 2023 hearing on the motions, the court remarked this was "the first time [it was]

5

hearing [about] standing," and permitted the parties to file supplemental briefs on the issue.

On May 18, 2023, the court issued a written order granting Nagy's motion to set aside the statement of decision. The court agreed with Nagy that Zaza lacked standing, explaining:

"[Zaza's] argument here fails because he seeks to recover damages on a contract for stock ownership. [Zaza] does not argue or establish that the shareholder agreement provides him a specific remedy for damages separate to the harm suffered by [Gaboratory]. . . . [¶] [Zaza's] claim for breach of contract [therefore] is a derivative suit."

On June 9, 2023, in accordance with its May 18 ruling, the court entered judgment against Zaza. Zaza timely appealed. Nagy timely filed a protective cross-appeal from the court's January 17, 2023 statement of decision. Nagy consents to dismissal of the protective cross-appeal if we affirm the June 9, 2023 judgment.

## DISCUSSION

### A. *Overview of Standing Principles and Standard of Review*

" 'Standing is a threshold issue necessary to maintain a cause of action, and the burden to allege and establish standing lies with the plaintiff.' [Citation.] 'Standing goes to the existence of a cause of action [citation], and the lack of standing may be raised at any time in the proceedings.' [Citation.]" (*Spotlight on Coastal Corruption v. Kinsey* (2020) 57 Cal.App.5th 874, 882; see *Save Agoura Cornell Knoll v. City of Agoura Hills* (2020) 46

6

Cal.App.5th 665, 727 (*Save Agoura*) ["the issue of standing can be raised at any time, including for the first time on appeal"].)[4]

"Standing is a question of law that we review de novo. [Citation.]" (*Citizens for Amending Proposition L. v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1174.)

### B. *Zaza Lacked Standing to Pursue His Breach of Contract Claim in an Individual Capacity*

Zaza contends the trial court erred in concluding he lacked standing to pursue his breach of contract claim as a direct, rather than derivative, cause of action. We disagree.

"Shareholders may bring two types of actions, 'a direct action filed by the shareholder individually (or on behalf of a class of shareholders to which he or she belongs) for injury to his or her interest as a shareholder,' or a 'derivative action filed on behalf of the corporation for injury to the corporation for which it has failed or refused to sue.' [Citation.] 'The two actions are mutually exclusive: i.e., the right of action and recovery belongs either to the shareholders (direct action) or to the corporation (derivative action).

---

[4] Zaza does not dispute that Nagy may raise the issue of standing for the first time on appeal. We therefore need not address Zaza's arguments that (1) Nagy's motion to vacate judgment, which challenged Zaza's standing, was untimely, (2) the trial court lacked jurisdiction to rule on the motion to vacate judgment because it failed to do so within "75 days from the mailing of notice of entry of judgment by the clerk of the court . . . , or if that notice has not been given, 75 days after the first notice of intention to move to set aside and vacate the judgment," as Code of Civil Procedure section 663a, subdivision (b) requires (see Code Civ. Proc., § 663a, subd. (b)), and (3) the court's failure to rule within the 75-day period resulted in the automatic denial of the motion to vacate judgment.

[Citation.]' " (*Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 311-312 (*Schuster*), italics omitted.)

"Whether a cause of action is derivative or can be asserted by an individual shareholder is determined by considering the wrong alleged." (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 228 (*Sole Energy*).) "An action is derivative . . . ' "if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets." ' [Citation.]" (*Everest Investors 8 v. McNeil Partners* (2003) 114 Cal.App.4th 411, 425.) "On the other hand, California cases recognize that a stockholder's individual suit ' "is a suit to enforce a right against the corporation which the stockholder possesses as an individual." ' [Citation.]" (*Id.* at p. 426.)

Here, Zaza characterizes his claim as an action "to receive his share of the profits from sales which were withheld from him by Nagy." In other words, he contends he sustained damages because (1) under the shareholder agreement, he owns 49 percent of the shares in Gaboratory, (2) his shares entitle him to a share of Gaboratory's profits, and (3) Nagy's conduct caused Gaboratory's profits to decrease. The gravamen of the claim thus is injury to the whole of Gaboratory in the form of lost profits, and Zaza's damages are merely incidental to that injury.

Zaza attempts to resist this conclusion, arguing "the only harm [here] was to Zaza, not to the whole body of [Gaboratory's] stock." He urges "[t]he whole body of stock was the 49 [percent] owned by [Zaza] and the 51 [percent] owned by Nagy. Nagy suffered no harm because it was she who was selling the products on her own behalf." Zaza, however, fails to differentiate between (1) harm to Nagy individually, as a practical matter, and (2) harm

8

to Nagy's shares in Gaboratory. Even if Nagy personally profited by selling Gaboratory jewelry through other companies, her conduct decreased Gaboratory's profits—harming the *entirety* of the corporation, including her ownership interest, in the process.

We therefore conclude Zaza's claim concerns injury to the whole of Gaboratory, and he thus lacked standing to pursue the claim as a direct cause of action. (See *Schuster*, *supra*, 127 Cal.App.4th at p. 313 ["[a]n individual cause of action exists only if damages to the shareholders were not incidental to damages to the corporation"]; Marsh et al., Marsh's Cal. Corporation Law (2025 1 Supp. 2020-2021) Derivative Action, § 15.11[A][1] ["[t]he clearest cases [of derivative actions] are those involving situations where the alleged wrongful actions of the defendant[ ] have reduced the corporate assets and net worth"].)

And the various authorities on which Nagy relies support our conclusion. (See, e.g., *Sole Energy*, *supra*, 128 Cal.App.4th at p. 218 [putative shareholders lacked standing to recover corporation's "future profits allegedly lost as a result of tortious conduct directed to the shareholders individually" because "any such lost profits belong to the corporation and cannot be recovered as damages by individual shareholders in a nonderivative suit"]; *Avikian v. WTC Financial Corp.* (2002) 98 Cal.App.4th 1108, 1115 (*Avikian*) [plaintiffs' action was derivative where their "core claim [was] that defendants mismanaged [the corporation], and entered into self-serving deals to sell [the corporation's] assets to third parties"]; *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 126 (*Nelson*) ["[t]he economic damages proven at trial were lost profits to the corporation as the result of [the majority shareholder's] reject[ion of business] opportunities. . . . A lost opportunity to increase corporate assets or net worth is the most common situation in which a derivative action is the only appropriate remedy"].)

9

None of Zaza's arguments to the contrary is persuasive. First, Zaza contends the decisions in *Jones v. H.F. Ahmanson & Co.* (1969) 1 Cal.3d 93 (*Jones*), *Jara v. Suprema Meats, Inc.* (2004) 121 Cal.App.4th 1238 (*Jara*), and *Schrage, supra,* 69 Cal.App.5th 126 support that he properly pursued his claim as a direct, individual cause of action.

*Jones* and *Jara,* however, are distinguishable because each involved alleged harm to minority shareholders in the absence of harm to the corporation as a whole. (See *Jones, supra,* 1 Cal.3d at p. 107 ["Although [the plaintiff] does allege that the value of her stock has been diminished by defendants' actions, she does not contend that the diminished value reflects an injury to the corporation and resultant depreciation in the value of the stock. Thus the gravamen of her cause of action is injury to herself and the other minority stockholders"]; *Jara, supra,* 121 Cal.App.4th at p. 1258 [noting "the record show[ed] the company in fact experienced extraordinary growth," and "the gravamen of [the] complaint [was] that [the plaintiff] was deprived of a fair share of the corporation's profits as a result of defendants' generous payment of executive compensation to themselves"].)

And *Schrage* affirmatively undermines Zaza's standing argument. In *Schrage,* the plaintiff filed an action against his two brothers for involuntary dissolution of the family car dealership business and breach of fiduciary duty. (*Schrage, supra,* 69 Cal.App.5th at p. 131.) Each brother owned a one-third interest in the business. (*Id.* at p. 133.) The plaintiff alleged his brothers "engaged in a pattern of self-dealing and mismanaged the business by, among other things, misappropriating company assets to fund a separately owned car dealership." (*Id.* at p. 132.)

Following a bench trial, the court found in favor of the plaintiff on the breach of fiduciary duty claim and entered a

judgment of approximately $31 million in his favor.  (*Id.* at pp. 132, 135.)  The appellate court reversed, concluding the plaintiff lacked standing because his "cause of action was derivative, not individual."  (*Ibid.*)  The court reasoned, in pertinent part:

"[The plaintiff] did not allege, and the trial court did not award, damages from any injury that was not 'incidental to an injury to the corporation.'  [Citations.]  [¶]  Indeed, [the plaintiff's] primary complaint was that his brothers' mismanagement (including by driving him out of the Sage Automotive Group) squandered the Sage Automotive Group's assets and ultimately led to its demise.  That is a derivative claim.  [¶] . . . [¶]  To allow [the plaintiff] to maintain his cause of action for breach of fiduciary duty as an individual action would essentially eliminate the derivative action rule in the context of close corporations and other closely held entities.  California law does not support that result."  (*Id.* at pp. 152–153, 158.)

Zaza's theory—that he suffered harm because Nagy's conduct decreased Gaboratory's profits—is analogous to the plaintiff's theory in *Schrage,* i.e., that the other shareholders' conduct injured him by decreasing the value of his one-third interest in the family business.  *Schrage*'s holding that the plaintiff's claims in that case were derivative therefore supports that Zaza's claim here likewise is derivative in nature.

Zaza insists *Schrage* nonetheless supports his standing to pursue an individual claim because "*Schrage* . . . cites *Sutter v. General Petroleum Corp.* (1946) 28 Cal.2d 525, 530 [(*Sutter*)] for the proposition that 'a stockholder may sue as an individual where he is directly and individually injured although the corporation may also have a cause of action for the same wrong.' "  *Sutter*, however, is distinguishable, as it involved a fraud perpetrated directly on the plaintiff before the formation of the corporation at issue.  (See

11

*Sutter, supra,* 28 Cal.2d at pp. 530–531; see also *Hilliard v. Harbour* (2017) 12 Cal.App.5th 1006, 1014 ["[t]he point of the Supreme Court opinion [in *Sutter, supra,*] is that while Sutter lost his investment, which was represented by the value of the stock, and its reduction in value was the measure of his loss, the damages all flowed from the defendants' tort that preceded and induced the investment"].)  And *Schrage*'s citation to *Sutter*—merely for purposes of explaining the distinction between direct and derivative claims—does not impact *Schrage*'s holding.  We therefore conclude Zaza's authorities fail to support his standing to pursue a direct cause of action here.

Second, Zaza argues he had standing to pursue his claim as an individual cause of action because "[he] and Nagy were the only two members" of Gaboratory.  But *Nelson*, one of the authorities on which Nagy relies, squarely addresses and rejects this argument:

"Whether there is one minority shareholder or many, an action is individual only if the stock of the individual plaintiff or plaintiffs is the only stock affected adversely.  [Citation.]  [¶] [The plaintiff] contends that the requirement of a derivative action under the circumstances of this case [(i.e., where there are only two shareholders)] would be a 'nonsensical application of the law,' because an award of damages to the corporation would allow [the defendant] to share in the recovery, in effect, paying damages to herself.  A shareholder derivative suit is an action in equity. [Citation.] . . . [T]he court may equitably distribute damages in a shareholder derivative action to avoid any such 'nonsensical' result.

"A derivative action may appear to [the plaintiff] to be an empty formality when there are only two shareholders, and one of them is the alleged wrongdoer.  However, the law demands certain prerequisites to bringing a derivative action which have not been alleged or proven in this case . . . . [¶] Failure to comply with the

12

requirements . . . deprives a litigant of standing.  [Citation.]”
(*Nelson*, *supra*, 72 Cal.App.4th at p. 127.)

Third, and finally, Zaza argues his “contract cause of action
was not derivative [because it] was against the other contracting
party, Nagy.”  In support of this argument, he relies on the
following language from *Sutter*, quoted in *Schrage*, *supra*:
“ ‘ “[I]f the injury is one to the plaintiff as a stockholder and to
him individually, and not to the corporation, *as where the action is
based on a contract to which he is a party*, or on a right belonging
severally to him, or on a fraud affecting him directly, it is an
individual action.” ’ ”  (*Schrage*, *supra*, 69 Cal.App.5th at p. 150,
quoting *Sutter*, *supra*, 28 Cal.2d at p. 530, italics added.)  In
addition, Zaza argues, “Nagy further breached the contract by
converting the trademark, ‘Gaboratory, Inc.,’ [Zaza’s] property,
to her name.  [Citation.]  Th[is] basis for the contract cause of action
cannot by any stretch of the imagination be seen as a derivative
claim.”  (Capitalization omitted.)

But neither *Schrage* nor *Sutter* holds that every claim pleaded
as a purported breach of contract constitutes a direct, rather than
derivative, cause of action.  Moreover, the contract at issue here—
the shareholder agreement—merely sets forth the parties’
respective ownership interests in Gaboratory.  And, as the trial
court noted, Zaza fails to identify any provisions in the agreement
that “provide him a specific remedy for damages separate to the
harm suffered by Gaboratory.”

We therefore conclude Zaza’s breach of contract claim alleges
injury incidental to harm to Gaboratory.  Zaza’s claim therefore
is derivative, and he lacked standing to pursue it in an individual
capacity.

Accordingly, we affirm the June 9, 2023 judgment and
dismiss Nagy’s protective cross-appeal as moot.

## DISPOSITION

The June 9, 2023 judgment is affirmed. Respondent's protective cross-appeal is dismissed as moot. Respondent is awarded costs on appeal.

NOT TO BE PUBLISHED.

                                        ROTHSCHILD, P. J.

We concur:


BENDIX, J.



M. KIM, J.

14