Filed 5/21/15  Rahbarian v. Brasher's Sacramento Auto Auction CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| PAIMAN RAHBARIAN et al., | |
| Plaintiffs and Appellants, | C071884 |
| v. | (Super. Ct. No. 34201000080282CUBCGDS) |
| BRASHER'S SACRAMENTO AUTO AUCTION, INC. et al., | |
| Defendants and Respondents. | |

The last time this case was before us, we affirmed the trial court's order granting defendant Brasher's Sacramento Auto Auction, Inc.'s (Brasher's Auto Auction) anti-SLAPP motion directed at a cause of action for malicious prosecution.  (*Rahbarian v. Brasher's Sacramento Auto Auction, Inc.* (Apr. 10, 2014, C069312) [nonpub. opn.].)  This time, we affirm the trial court's order sustaining defendants Brasher's Auto Auction and John E. Brasher's (the Brasher defendants) third demurrer to plaintiffs' remaining causes of action and dismissing the case with prejudice.  As we explain, plaintiffs do not have standing to assert many of their claims against the Brasher defendants.  With respect

1

to those supported by standing, plaintiffs have failed to allege facts sufficient to constitute any causes of action against these defendants.  Nor have plaintiffs shown a reasonable possibility these defects can be cured by amendment.

BACKGROUND

"Because this case comes before us on appeal from a judgment sustaining a demurrer, we assume the truth of the facts alleged in the complaint and the reasonable inferences that may be drawn from those facts.  [Citations.]" (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 883.)  We therefore take our facts from plaintiffs' operative complaint, submitted exhibits, and matters we may judicially notice, including our unpublished opinion in the prior appeal.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)  "Judicial notice of our prior opinion is appropriate because it 'help[s] complete the context of this case.'  [Citation.]" (*Bui v. Nguyen* (2014) 230 Cal.App.4th 1357, 1363, fn. 3.)

Brasher's Auto Auction is a commercial automobile auctioneer and also provides floor financing for dealer purchases.  John E. Brasher is the president of Brasher's Auto Auction.

In 2005, Luxury Imports of Sacramento, Inc. (Luxury) was created to own and operate a Suzuki dealership.  Shayan Rahbarian was Luxury's president.  Brasher's Auto Auction had a preexisting relationship with the Rahbarian family, having sold vehicles to other companies operated by Shayan's father, Mike, and brother, Paiman.[1]  Brasher's Auto Auction agreed to loan $2.9 million to Luxury on a revolving line of credit to fund the purchase of vehicle inventory.  (*Rahbarian v. Brasher's Sacramento Auto Auction, Inc.*, *supra*, C069312.)

---

[1]     Because these individuals share a common last name, we use their first names in this opinion for clarity.  Collectively, we refer to them as the Rahbarians or the Rahbarian family.

2

Luxury executed and delivered to Brasher's Auto Auction a promissory note, flooring agreement, and security agreement. The promissory note provided repayment of the loan would be in accordance with the flooring agreement. Under the flooring agreement, Luxury was required to pay Brasher's Auto Auction the full amount advanced for the purchase not more than two business days after the sale of the vehicle by Luxury. Sale proceeds were required to be held by Luxury in trust for Brasher's Auto Auction until the entirety of the advance was repaid. In the event of default by Luxury, the promissory note, flooring agreement, and security agreement allowed Brasher's Auto Auction to declare all sums advanced immediately due and payable. The security agreement granted Brasher's Auto Auction a security interest in all personal property owned or thereafter acquired by Luxury (designated "the 'Collateral' "), including "[a]ll goods, merchandise, vehicles and other personal property." Upon default, the security agreement also granted Brasher's Auto Auction the right to enter Luxury's premises to "remove the Collateral . . . in order to maintain, sell, collect or liquidate the Collateral." (*Rahbarian v. Brasher's Sacramento Auto Auction, Inc.*, *supra*, C069312.)

Mike and Shayan also signed personal guaranties of all obligations of Luxury. An existing deed of trust granting Brasher's Auto Auction a security interest in certain real property owned by the Rahbarian Family Trust in connection with obligations owed to Brasher's Auto Auction by one of Mike's companies, Cars 4 Less, Inc., was modified to secure Brasher's Auto Auction for payment of Luxury's obligations under the promissory note and flooring agreement. (*Rahbarian v. Brasher's Sacramento Auto Auction, Inc.*, *supra*, C069312.) Shayan and his wife, Alicia Cordona, also executed and delivered a

deed of trust granting Brasher's Auto Auction a security interest in their house in Rocklin.[2]

### *Underlying Lawsuit and Bankruptcy*

In June 2007, after Luxury defaulted on its obligations and Brasher's Auto Auction repossessed certain of its vehicle collateral, Brasher's Auto Auction sued Luxury and various other defendants, including Shayan and Mike, asserting causes of action for breach of the promissory note and flooring agreement, breach of the personal guarantees, default under the security agreement, foreclosure of the deed of trust, conversion of collateral, and wrongful possession and detention of collateral. An amended complaint, filed in December 2007, added Paiman as a defendant in the conversion and wrongful possession of collateral causes of action and asserted an additional cause of action against Paiman and others for fraud. (*Rahbarian v. Brasher's Sacramento Auto Auction, Inc.*, *supra*, C069312.)

Mark A. Serlin, the attorney who filed the underlying lawsuit, stated the basis for the action in his declaration in support of the aforementioned anti-SLAPP motion: "Luxury had borrowed millions of dollars on a flooring line and had failed to repay Brasher's [Auto Auction]. Moreover, it was evident that dozens and dozens of vehicles were sold 'out of trust' by Luxury at the direction of the Rahbarian family. In a nutshell, when a dealer sells a vehicle and fails to pay the flooring lender with the sales proceeds, that is selling out of trust. I was also advised that when my client went out to Luxury's lot to pick [up] my client's collateral, the Rahbarians refused to allow any of the vehicles to be taken and only when the police intervened was my client able to retrieve a certain number of cars. However, my client advised me that numerous cars simply disappeared

---

[2] This deed of trust was judicially noticed by the trial court, but was not made a part of the record on appeal. However, while appellants dispute the enforceability of the deed of trust, they do not dispute its existence.

from the lots and were never recovered." (*Rahbarian v. Brasher's Sacramento Auto Auction, Inc., supra*, C069312.)

Also in June 2007, Luxury filed a petition for bankruptcy protection under Chapter 11 of Title 11 of the United States Code (the Bankruptcy Code), which was subsequently converted into a liquidation case under Chapter 7. Thereafter, the United States Bankruptcy Court for the Eastern District of California (the Bankruptcy Court) approved a settlement agreement entered into between the Chapter 7 bankruptcy trustee and Brasher's Auto Auction. Among other things, the agreement provided that the trustee and Brasher's Auto Auction released each other from any and all claims, and further provided that Brasher's Auto Auction would acquire the right to pursue avoidance actions under the Bankruptcy Code. Brasher's Auto Auction then successfully sued Shayan, Cordona, Paiman, and his wife, Vera Davydenko, in the Bankruptcy Court to recover money fraudulently transferred from Luxury to these individuals prior to the bankruptcy. Judgment in the amount of $308,150 was entered against Shayan. Judgment in the amount of $294,150 was entered against Paiman. Judgment in the amount of $200,000 was entered against Cordona. Judgment in the amount of $80,250 was entered against Davydenko.

Meanwhile, the underlying lawsuit proceeded against defendants other than Luxury. Brasher's Auto Auction apparently recovered on Mike's personal guaranty, although the record does not reveal the amount. With respect to Shayan, the case was dismissed without prejudice. With respect to Paiman, the fraud cause of action was voluntarily dismissed during trial, while the conversion cause of action went to the jury and resulted in a verdict for Paiman. (*Rahbarian v. Brasher's Sacramento Auto Auction, Inc., supra*, C069312.)

### The Present Lawsuit

In June 2010, Paiman, Shayan, Davydenko, and Cordona filed a lawsuit against Brasher's Auto Auction, John E. Brasher, and Luxury's general manager, Kamyar

Soltani, asserting causes of action for fraud and deceit, constructive fraud, conspiracy to commit fraud, conversion, breach of fiduciary duty, and malicious prosecution.

### First Amended Complaint and First Demurrer

An amended complaint, asserting the same causes of action, was filed in January 2011. With the exception of the malicious prosecution claim—which was stricken pursuant to the anti-SLAPP statute, a decision we affirmed on appeal (*Rahbarian v. Brasher's Sacramento Auto Auction, Inc.*, *supra*, C069312)—the lawsuit was based on allegations Soltani pretended to be Shayan's friend, represented he was also John E. Brasher's close friend, encouraged Shayan to open Luxury and negotiated the floor financing agreement with Brasher's Auto Auction, promised Shayan that Brasher's Auto Auction would continue to loan money to Luxury, convinced Shayan to sell his home in Rocklin and other unspecified property in order to invest the equity from these sales into Luxury, also persuaded Paiman to refinance his home in order to invest that equity into Luxury, and then transferred the equity from these sales to Brasher's Auto Auction to be applied to Soltani's personal account rather than Luxury's account. According to the complaint, Soltani had a personal account at Brasher's Auto Auction because he was using the Luxury lot to run an unlicensed dealership known as Sacramento Imports. The complaint also alleged Soltani stole tens of thousands of dollars from Luxury's cash boxes each month. The complaint further alleged Soltani used his position as general manager "to loot [Luxury] for his personal gain" and "was attempting to protect his profits by conspiring with [Brasher's Auto Auction and John E. Brasher], as described in greater detail below." The promised greater detail consisted of allegations that Brasher's Auto Auction repossessed Luxury's vehicle inventory, Soltani assisted in the repossession and then never came back to work for Luxury, Soltani's alleged wrongdoing was discovered after the repossession, and Soltani used Luxury's bank accounts to pay off cars he personally financed through Brasher's Auto Auction with "assistance" from the Brasher defendants, i.e., Brasher's Auto Auction "simultaneously refused to cash

6

checks that [Luxury] tendered for vehicles that it had financed with defendant Brasher's Auto Auction."

In February 2011, the Brasher defendants demurred to the amended complaint. The trial court sustained the demurrer with leave to amend, finding plaintiffs failed to plead fraud against the Brasher defendants with the requisite specificity and failed to properly allege the elements of either fraud or conversion against these defendants. More fundamentally, the trial court also concluded plaintiffs lacked standing to bring the lawsuit because the alleged damage was done to Luxury; therefore, the action belonged to Luxury, not plaintiffs, who sought to recover their investment in the company.

### *Second Amended Complaint and Second Demurrer*

In April 2011, plaintiffs filed a second amended complaint, asserting the same causes of action, but attempting to allege a conspiracy between Soltani and the Brasher defendants to defraud plaintiffs with greater specificity. For example, the complaint alleged Soltani began running his unlicensed dealership while working for Shayan and Paiman's father, Mike, at Cars 4 Less. Soltani also allegedly "skimmed cash" and "double-financed" cars while at Cars 4 Less. When Mike decided to close Cars 4 Less, neither Soltani nor John E. Brasher welcomed the news. According to the complaint, Soltani "needed the Rahbarian's dealership to keep skimming cash and for the Rahbarian's dealership to serve as a front for his illegal unlicensed dealership," while John E. Brasher wanted to ensure payment for the cars purchased by Cars 4 Less and Soltani. Thus, "sometime before 2005, [the Brasher defendants] and Soltani conspired to have the Rahbarian family finance another dealership. Paiman was recently married and told Soltani he would not sign guarantees for any new dealership business, so Soltani and [John E. Brasher] conspired to convince [Shayan] to be the figurehead for the new dealership business. Defendant Soltani and [John E. Brasher] knew that Shayan had no experience in running a car dealership business, but both of them convinced Shayan to be a figurehead for the new business. Defendant Soltani and [John E. Brasher] told Shayan

7

in or about 2005 that they would make him a success in the car dealership business, and that Shayan only needed to show up at the dealership occasionally as a figurehead. Shayan reasonably relied on these representations made to him by Soltani and [John E. Brasher] that they would make [him] a success in the car dealership business and Shayan agreed to establish a new car dealership business called [Luxury] based on these representations."

The complaint then alleged Soltani and the Brasher defendants prepared the floor financing documents, leaving blanks with respect to the starting debt, which Shayan signed; thereafter, a finance manager at Brasher's Auto Auction filled in the blanks with the amount owed by Cars 4 Less and forged Shayan's initials on those pages. While this finance manager "normally required credit checks and proof of financial ability to repay," John E. Brasher "personally approved the floor financing for [Luxury] without any credit check whatsoever" and "without any reason to believe that Shayan was capable of running a car dealership." Brasher's Auto Auction then "continued to sell cars to Soltani for his unlicensed dealership" and "continued a separate line of credit for [Soltani], but required [him] to pay off his line of credit with checks from [Luxury] in order to hide the sales by [Brasher's Auto Auction] to an unlicensed dealership."

In May 2011, the Brasher defendants demurred to the second amended complaint. The trial court issued a tentative decision sustaining the demurrer, without leave to amend, based on a lack of standing to bring the lawsuit, explaining: "Plaintiffs have alleged that they lost their investment in the business known as Luxury. [Citations.] The Court does not concur with plaintiffs' contention that they have alleged an injury personal to themselves. Multiple references throughout the complaint reflect that Soltani persuaded the plaintiffs to invest in Luxury, and that they have lost their investment, as the funds were diverted from the business by Soltani. These are derivative claims." However, after hearing argument on the matter, the trial court granted leave to amend

8

based on an assurance from plaintiffs' counsel that amendment would rectify the standing problem.

### *Third Amended Complaint and Third Demurrer*

In November 2011, the operative third amended complaint was filed. With the exceptions of omitting the malicious prosecution cause of action and adding an unjust enrichment cause of action, the third amended complaint was virtually identical to the second amended complaint. On the issue of standing, with respect to Shayan and Cordona, while the third amended complaint omits the phrase "lost their investment in the business known as Luxury," which appeared several times in the second amended complaint, the third amended complaint nevertheless asserts the alleged conspiracy between Soltani and the Brasher defendants caused Shayan and Cordona to lose the "equity" and "money" Shayan put into Luxury. With respect to Paiman and Davydenko, the third amended complaint states Soltani convinced Paiman to refinance their home and "loan" the equity to Luxury by promising him "big profits." These allegations are consistent with the second amended complaint, except the former referred to the transaction as both a "loan" and an "investment."

The Brasher defendants again demurred. On the standing issue, defendants argued plaintiffs' amendment did not rectify their lack of standing to bring the lawsuit. Specifically, defendants argued: "Throughout the [third amended complaint], Plaintiffs repeatedly state that they transferred monies to Luxury, and that they are bringing these claims because they lost money in their business, namely Luxury. [Citation.] While the [third amended complaint] omits language from the second amended complaint to the effect that the alleged damages were based on losses of investment in Luxury, the only material difference between [paragraphs] 31, 36, 41, and 52 of the second amended complaint and the same paragraphs of the [third amended complaint] is the deletion of the words 'lost their investment in the business known as Luxury.' However, the alleged basis of the claim is identical, namely that they didn't get their money back from Luxury.

9

Hence, these minor deletions are a distinction without a difference. Moreover, even Plaintiffs' own declarations in this case demonstrate that their losses were due to losses of their investment in Luxury [citing a declaration Paiman submitted in opposition to the anti-SLAPP motion in which he declared under penalty of perjury that he 'invested a considerable amount of money in Luxury']. . . . The [third amended complaint] does not and cannot allege any harms uniquely or individually suffered by Plaintiffs apart from the injury (if any) suffered by Luxury. Therefore, all of these claims had to be brought, if at all, by Luxury."

Plaintiffs opposed the demurrer. On the standing issue, plaintiffs argued that because the third amended complaint alleged Soltani caused the equity from the sale of Shayan and Cordona's Rocklin home to be transferred directly from an escrow account to Brasher's Auto Auction, bypassing Luxury altogether, "[t]here is no damage at all to [Luxury] in this transaction, and hence [Luxury] has no cause of action in this transaction, and defendants' argument that Shayan and [Cordona] lack standing to bring this cause of action because the damage is to [Luxury] is completely without merit." Plaintiffs also argued they each "*personally* suffered monetary damages" in the form of the judgments entered against them in the bankruptcy action. Finally, plaintiffs argued the money Paiman loaned to Luxury "represented personal funds belonging to [Paiman and Davydenko]," and therefore, the loss of this money was an injury personal to these plaintiffs, and not an injury suffered by Luxury.

In reply, defendants argued: "By claiming that their damages stem from something other than lost investments in Luxury, [plaintiffs] are contradicting their prior pleadings and thus fall squarely into the sham pleading doctrine." With respect to the argument that the equity from the sale of Shayan and Cordona's house was transferred directly to Brasher's Auto Auction, defendants argued: "Shayan and [Cordona] had given Brasher's [Auto Auction] a deed of trust against that very house in the [f]all of 2005 in connection with Shayan's execution and delivery of a guaranty to Brasher's

10

[Auto Auction] at the same time. . . . Inasmuch as the guaranty and deed of trust were given in 2005, months before the alleged misrepresentations of Soltani in the summer of 2006, it is manifest that there is and can be no possible causal connection between those alleged representations and any damages allegedly suffered by plaintiffs by reason of payment pursuant to a previously recorded deed of trust. Therefore, plaintiffs suffered no direct and separate damages and thus lack standing such that the demurrer to the [third amended complaint] must be sustained without leave to amend."

The trial court sustained the demurrer without leave to amend. On the standing issue, the trial court explained: "Plaintiffs allege that they transferred money to Luxury and that they lost money in their business, Luxury. Plaintiffs have now deleted the language 'lost their investment in the business known as Luxury.' However, because the essence of their claim is that they did not get their money back from Luxury, the standing defect is still apparent on the face of the [third amended complaint]. The [third amended complaint] does not allege any actionable harm uniquely or individually suffered by plaintiffs apart from the injury allegedly suffered by Luxury." The trial court also explained it was disregarding the amended "'loan' allegations, as distinct from the 'investment' allegations," under the sham pleading doctrine, and further explained: "[E]ven if plaintiffs made loans instead of investments, the damages resulted from Luxury's inability to repay the loans. Thus, the damages to plaintiffs are merely incidental to the damages suffered by Luxury." With respect to plaintiffs' argument that Shayan and Cordona suffered direct harm because the equity from the sale of their house was transferred directly to Brasher's Auto Auction, the trial court stated it had "already taken judicial notice of the fact that plaintiffs had given a guaranty and deed of trust to the home to [Brasher's Auto Auction] in 2005, months before the alleged misrepresentations of Soltani, therefore negating any causal connection. Moreover, the allegations of direct transfer are contradicted by other allegations in the [third amended

11

complaint] that the equity in the home was transferred to Luxury rather than [Brasher's Auto Auction]."

The trial court also ruled plaintiffs failed to allege their fraud-based causes of action against Brasher's Auto Auction with the requisite specificity, explaining: "Plaintiffs have failed to allege facts that Soltani, who was alleged to have made the misrepresentations, was an agent of [Brasher's Auto Auction] and have failed to allege specific misrepresentations. Because Soltani is alleged to be the general manager of Luxury, more than vague and conclusionary allegations are required to allege that Soltani was actually an agent of [Brasher's Auto Auction]." Finally, the trial court explained: "No cause of action is stated against [Brasher's Auto Auction] based on the fraudulent transfer/preference judgments entered by the Bankruptcy court against the plaintiffs. No connection is made between the payments made by Luxury to plaintiffs giving rise to the fraudulent transfer judgments and the alleged misrepresentations set forth in the [third amended complaint]."

## DISCUSSION

## I

### *Standard of Review*

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]

12

The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## II

### *Standing*

Our Supreme Court has long held that "misfeasance or negligence on the part of the managing officers of a corporation, resulting in loss of its assets, . . . is an injury to the corporation for which it must sue. A stockholder cannot sue for damages because his [or her] stock is thereby rendered worthless." (*Anderson v. Derrick* (1934) 220 Cal. 770, 773.) "[S]uch an action would authorize multitudinous litigation and ignore the corporate entity. Under proper circumstances a stockholder may bring a representative action or derivative action on behalf of the corporation." (*Sutter v. General Petroleum Corp.* (1946) 28 Cal.2d 525, 530 (*Sutter*).)

Here, plaintiffs do not purport to state a derivative action on behalf of Luxury. Instead, they claim to have suffered unique and individual harm caused by defendants. However, their argument on the issue in the opening brief is patently deficient, containing no citation to relevant authority and no citations to the record, except for the trial court's order sustaining the demurrer. We could therefore consider the issue forfeited and affirm on that basis alone. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408 [opening brief must contain "meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error"]; see also *Singh v. Lipworth* (2014) 227 Cal.App.4th 813, 817, and authorities cited therein.) Nevertheless, because the issue was technically raised in the opening brief, and "because the [Brasher defendants] addressed the issue in [their] brief, and thus had an opportunity to respond to it," providing this court with the relevant legal authority and citations to the record and prompting plaintiffs

13

to do the same in their reply brief,**3** we exercise our discretion to address the issue. (*Thompson v. City of Petaluma* (2014) 231 Cal.App.4th 101, 109.)

In *Sutter*, *supra*, 28 Cal.2d 525, our Supreme Court explained the difference between a derivative action and individual action: "'The action is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets.' [Citation.] And a stockholder may sue as an individual where he [or she] is directly and individually injured although the corporation may also have a cause of action for the same wrong. [Citations.]" (*Id*. at p. 530.) There, the plaintiffs were Sutter, founder and shareholder of Rincon Development Company (RDC), and 26 other shareholders of the corporation. Two of the defendants were shareholders of Rincon Oil Company (ROC), which held an oil and gas lease and owned an offshore oil platform and derrick, with tanks and various equipment, on the leased property. Certain other tanks and equipment on the platform were owned by another defendant in the action, General Petroleum Corporation (GPC). (*Id*. at pp. 526-527.) The complaint alleged the defendants, knowing part of the platform had previously collapsed, and although repaired, had existing structural weaknesses, fraudulently misrepresented the condition of the platform to Sutter and persuaded him to organize RDC to purchase the platform and equipment and take over ROC's lease. The complaint also alleged various promises made by GPC, including promises to rent its equipment to RDC, purchase the oil produced, and supply expert assistance, which were alleged to have been made without any intention of performing. Based on these representations, Sutter formed RDC, he and the other plaintiffs invested capital therein, and the company bought the

---

**3**     Points raised for the first time in a reply brief will not be considered unless good cause is shown. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 723, pp. 790-791.)

14

platform and took over drilling (after also acquiring ROC for purposes of continuing the lease held by that company). Thereafter, GPC failed to make good on its promises and the platform collapsed into the ocean. (*Id*. at pp. 527-529.)

The plaintiffs sued the defendants for fraud. The lawsuit was dismissed by the trial court for failure to state an individual action against the defendants. (*Sutter*, *supra*, 28 Cal.2d at p. 529.) Our Supreme Court reversed, explaining: "[T]he essence of plaintiff Sutter's charge is that by reason of the fraudulent representations of defendants, he was induced to do several things, namely, abandon his own oil development projects, devote his time to the project whereby the [platform] and other facilities would be used[,] and *to form and invest in* [RDC] to carry on the new oil production project. The formation of the corporation and investing therein was only one of the several things which he did in reliance upon defendants' representations. The fraud was committed by defendants, and plaintiff Sutter took steps in reliance upon the misrepresentations including the formation of [RDC] *before that company was formed.* The tort was completed except as to the injury suffered. It is true that the promises made by defendants with no intent to perform were to run also to [RDC] when formed and that company and its successor [ROC] were to use the defective [platform]. In that fashion the defect in the [platform] and the failure to perform the promises injured [RDC] and [ROC,] but there was also a direct individual injury to plaintiff Sutter, and, as we have seen, the dual nature of the injury does not necessarily preclude an action by the stockholder as an individual." (*Id*. at pp. 530-531.) Rejecting the defendants' argument the alleged fraud involved "an injury to the assets of a corporation which is actionable by the corporation and not the stockholders individually," the court stated: "It is true that the corporations suffered injury, inasmuch as they were conducting the oil drilling operations and had contracts for the use of the structure, but the fraud was practiced on Sutter in the first instance and he was induced to form the corporation . . . and invest his money by reason of that fraud. . . . The injury resulted from the formation of a corporation and

15

investments therein to carry on a project that could not be conducted because of the fraud." (*Id*. at pp. 531-532.)

On the surface, there are similarities between this case and *Sutter*, *supra*, 28 Cal.2d 525, which is why we began our analysis with its explication. Here, the third amended complaint alleges Soltani and John E. Brasher persuaded Shayan to form Luxury in 2005 by assuring him that "they would make [him] a success in the car dealership business." According to the complaint, Soltani wanted the Rahbarian family to continue owning a car dealership so that he could continue operating the unlicensed dealership he began while working at Cars 4 Less and continue stealing from the business, which he did while employed as Luxury's general manager. Thus, at least with respect to Soltani, there is an inference his "promise" to help make Luxury successful was "made without any intention of performing" (Civ. Code, § 1710, subd. (4)), a misrepresentation as to his then-existing state of mind, and if properly pled, actionable deceit. (See *Tarmann v. State Farm Mutual Automobile Ins. Co.* (1991) 2 Cal.App.4th 153, 158-159.) However, while Soltani's alleged fraud arguably began before Luxury was formed—although, unlike *Sutter*, the entire fraud was not complete at that point—we need not decide whether *Sutter* would authorize an individual action by Shayan against Soltani. This is because Soltani is not the defendant who filed the successful demurrer. We are concerned only with the Brasher defendants. With respect to these defendants, there are no allegations that John E. Brasher's statement to Shayan about making Luxury successful was made without any intention of performing. Nor are there allegations this statement was intended to aid Soltani's alleged plan to steal from Luxury and use the business as a front for his unlicensed dealership. Indeed, the third amended complaint plainly alleges "[t]he conspiracy among [the Brasher defendants] and Soltani to use [Luxury] to pay off defendant Soltani's debts while allowing [Luxury's] debts to accumulate and earn interest for defendant Brasher's Auto Auction *began in the late summer of 2006*, about the same time that defendant Soltani began his efforts to persuade

16

plaintiffs [Shayan and Cordona] to sell their Rocklin home." (Italics added.) This is the gravamen of the wrong alleged against the Brasher defendants. (See *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 124 ["it is the gravamen of the wrong alleged in the pleadings, not simply the resulting injury, which determines whether an individual action lies"].) It occurred after Luxury was formed. *Sutter* is therefore distinguishable on that basis.

With the gravamen of the wrong alleged against the Brasher defendants so understood, i.e., as a conspiracy to allow Soltani to use Luxury to pay off Soltani's debt with Brasher's Auto Auction, we conclude the action belonged to Luxury. At its core, this is a case of misfeasance on the part of a corporate manager, Soltani, allegedly aided and abetted by third parties, the Brasher defendants, resulting in loss of corporate assets and causing plaintiffs to lose their investment in the corporation. (See *Anderson v. Derrick*, *supra*, 220 Cal. at p. 773; see also *Nelson v. Anderson*, *supra*, 72 Cal.App.4th at p. 125-126.)

Nevertheless, plaintiffs argue they have alleged unique and individual harm because (1) the equity from the sale of Shayan and Cordona's home was "transferred *directly* to Brasher's Auto Auction to pay Soltani's debts to Brasher's Auto Auction," and (2) Paiman and Davydenko's "loans" to Luxury "fraudulently went to pay off Soltani's debts at Brasher's Auto Auction, and to induce Paiman to make these loans, Paiman was fraudulently assured by John Brasher himself that he and Brasher's Auto Auction would guarantee the return of these monies, with interest, to Paiman."

Beginning with the latter argument, we conclude the trial court was correct to invoke the sham pleading doctrine to disregard allegations Paiman and Davydenko were suing defendants as money lenders, rather than investors in Luxury. Under the sham pleading doctrine, "when a complaint contains allegations that are fatal to a cause of action, a plaintiff cannot avoid those defects simply by filing an amended complaint that omits the problematic facts or pleads facts inconsistent with those alleged earlier.

17

[Citations.] Absent an explanation for the inconsistency, a court will read the original defect into the amended complaint, rendering it vulnerable to demurrer again. [Citations.]" (*Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035, 1044.)

Here, plaintiffs' explanation for the inconsistency is that they were mistaken about the legal status of the money transferred to Luxury, and that "[m]ost lay persons would probably include a 'loan' as a type of 'investment.'" We are not persuaded by this explanation. Both the original and amended complaints alleged Soltani persuaded Paiman to "refinance his home (in which [Davydenko] had a community property interest) and . . . *invest* the equity into Luxury" so that Luxury could "become a more valuable business and [Paiman] could thereby get a bigger and bigger *return on his investment*." (Italics added.) These complaints also alleged Soltani and the Brasher defendants "persuaded [Paiman] to *invest* more and more money into Luxury . . . and persuaded [Paiman] that [he] would make *big profits* from his *investment*." (Italics added.) Nowhere in either the original complaint or the amended complaint is the money transferred to Luxury described as a loan. Indeed, in opposition to the anti-SLAPP motion filed in response to the amended complaint, Paiman filed a declaration stating under penalty of perjury that he "*invested* a considerable amount of money in Luxury." (Italics added.) Thereafter, the second amended complaint referred to the transfer as both an investment and a loan, alleging Paiman was promised "a return on the loans," but also that he and Davydenko were defrauded of their "investment in Luxury." This complaint also doubled the amount allegedly invested/loaned to Luxury, from $2 million to $4 million. Finally, the third amended complaint deleted the "investment" reference, while retaining the higher dollar amount allegedly loaned to Luxury. However, even this complaint alleged Paiman was promised "*big profits* from the loans." (Italics added.)

The trial court was correct to conclude the loan allegations were a sham. Black's Law Dictionary defines "loan" to mean "[a] thing lent for the borrower's temporary use;

18

esp., a sum of money lent at interest" (Black's Law Dict. (8th ed. 2004) p. 954, col. 1), while to "invest" means "[t]o make an outlay of money for profit." (*Id*. at p. 844, col. 2.) Consistent with the prior "investment" designation, the third amended complaint makes clear that Paiman and Davydenko were seeking profit from their transfer of money to Luxury, not simply repayment with interest. They invested in Luxury. And due to the alleged conspiracy between Soltani and the Brasher defendants, *Luxury's assets* were either stolen by Soltani or transferred to Brasher's Auto Auction to pay Soltani's debts, causing the business to fail and rendering Paiman and Davydenko's investment therein worthless. Thus, the gravamen of the action is injury to Luxury; it was for Luxury to sue to recover its assets, not plaintiffs individually.

However, we do agree Luxury had no basis to sue defendants to recover money "transferred *directly* [from the sale of Shayan and Cordona's home] to Brasher's Auto Auction." According to the allegations of the third amended complaint, which mirrored those of previous complaints, and we must accept as true for purposes of review, this money never became an asset of Luxury. Instead, Soltani allegedly defrauded Shayan individually by telling him the money was being invested in Luxury, when it was actually being diverted to Brasher's Auto Auction to be applied to Soltani's separate account. Based solely on this alleged transaction, we conclude Shayan and Cordona have standing to bring claims against defendants. The question, then, is whether the third amended complaint states facts sufficient to constitute any cause of action against the Brasher defendants based on this transaction. We turn to this question now.[4]

---

[4]    We need not address plaintiffs' additional argument that "there is a direct causal connection between defendants' fraud and deceit in getting plaintiffs to loan money to [Luxury] (money that was subsequently misappropriated by defendants to pay Soltani's debts to Brasher's Auto Auction) and the payments made by [Luxury] back to plaintiffs for repayment of those loans that ended up as bankruptcy judgments against plaintiffs." This is because even if plaintiffs are correct that they would be entitled to recover the amounts paid in fraudulent transfer judgments *as damages*, they still must have standing

19

## III

### *Sufficiency of the Allegations of the Third Amended Complaint*

The third amended complaint asserts ten causes of action, one of which (the fifth cause of action for breach of fiduciary duty) was brought solely against Soltani, while the remaining nine causes of action were brought against both Soltani and the Brasher defendants. Again, we are concerned only with the Brasher defendants. The sixth, seventh, eighth, and ninth causes of action (for fraud and deceit, constructive fraud, conspiracy to commit fraud, and conversion) were brought by Paiman and Davydenko based on their alleged $4 million investment in Luxury, which we have concluded they lack standing to assert. We are therefore left with five causes of action brought by Shayan and Cordona that are based in part on the transfer of equity from the sale of their home directly to Brasher's Auto Auction. These are the first, second, third, fourth, and tenth causes of action (for fraud and deceit, constructive fraud, conspiracy to commit fraud, conversion, and unjust enrichment).

### A.

### *Fraud-Based Causes of Action*

The first cause of action alleges fraud and deceit. The elements of this tort are misrepresentation of a material fact, knowledge of falsity, intent to deceive, justifiable reliance, and resulting damage. (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469; 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 710, p. 125.) "In California, fraud must be pled specifically; general and conclusory allegations do not suffice. [Citations.] 'Thus "'the policy of liberal construction of the pleadings . . . will

_____

to assert the causes of action in the first place. And as for the causes of action supported by standing, i.e., those relating to the transfer of equity from the sale of Shayan and Cordona's house directly to Brasher's Auto Auction, plaintiffs must also adequately allege these causes of action against the Brasher defendants. As we explain immediately below, they have failed to do so.

20

not ordinarily be invoked to sustain a pleading defective in any material respect.'" [Citation.] [¶] This particularity requirement necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered.'" [Citation.] A plaintiff's burden in asserting a fraud claim against a [corporation] is even greater. In such a case, the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.' [Citation.]" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645; *Tarmann v. State Farm Mutual Automobile Ins. Co.*, *supra*, 2 Cal.App.4th at p. 157.)

Measured by these standards, the fraud allegations against the Brasher defendants fall short. All of the specific allegations of fraud concern Soltani. Plaintiffs allege Soltani convinced Shayan to sell his house in Rocklin by telling him "that since [he] owned a successful dealership, [he] should move to the more prestigious neighborhoods in El Dorado Hills." Soltani allegedly told Shayan "that [he] should sell [his] Rocklin family home [and] put the equity into [Luxury]" in order to "show [the Brasher defendants] that he was committed to [Luxury's] success"; "Soltani would then help [Shayan] find a new and better home in El Dorado Hills" and "Brasher's Auto Auction would assist in growing [Luxury's] business so that [Shayan] would shortly have more than enough money to buy a larger house in El Dorado Hills." The complaint then alleges Soltani "took [Shayan and Cordona] on several tours of El Dorado Hills to show them the type of house that [Soltani] would help [them] purchase to replace [their] Rocklin home once [they] sold it." Based on these alleged representations, Shayan and Cordona agreed to sell their home; however, "Soltani set up the escrow account for the sale" and "arranged for [nearly $380,000] in equity to be transferred directly from escrow to [Brasher's Auto Auction]" to be "applied to [Soltani's] personal account."

In contrast, allegations that the Brasher defendants were involved are vague and conclusory, consisting of a single repeated phrase, i.e., Soltani was "acting on behalf of

21

himself and as the agent for [the Brasher defendants]." Plaintiffs provide no *facts* supporting the legal conclusion that Soltani was an agent of the Brasher defendants. "'Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his [or her] behalf and subject to his [or her] control, and consent by the other so to act.' [Citation.] 'The principal must in some manner indicate that the agent is to act for him [or her], and the agent must act or agree to act on his [or her] behalf and subject to his [or her] control.' [Citation.]" (*Edwards v. Freeman* (1949) 34 Cal.2d 589, 592.) Plaintiffs do not allege that the Brasher defendants, by words or actions, manifested their consent to have Soltani act on their behalf and subject to their control, or that Soltani manifested his consent to do so. And while a principal may also ratify an agency relationship "'by accepting or retaining the benefit of the [purported agent's] act, with notice thereof,'" such "'ratification is possible only when the person whose unauthorized act is to be accepted purported to act as agent for the ratifying party.' [Citation.]" (*van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 571.) Here, while plaintiffs allege Brasher's Auto Auction accepted the transfer of equity from the sale of Shayan and Cordona's house, there are no specific factual allegations Soltani purported to act as agent of the Brasher defendants. Indeed, the allegations of the complaint suggest Soltani purported to act on behalf of Shayan and Cordona in setting up the escrow account, and then diverted those funds to Brasher's Auto Auction to pay his separate debt. Assuming this is true, the fact that Brasher's Auto Auction accepted Soltani's payment does not mean the Brasher defendants ratified his act of stealing from plaintiffs. Plaintiffs have not stated a cause of action for fraud and deceit against the Brasher defendants.

The second cause of action alleges constructive fraud based on the same operative facts. "'Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship. [Citation.]' [¶] '[A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty,

22

trust or confidence which results in damage to another *even though the conduct is not otherwise fraudulent*. Most acts by an agent in breach of his [or her] fiduciary duties constitute constructive fraud. The failure of the fiduciary to disclose a material fact to his [or her] principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud. . . . [Citation.]'" (*Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 562.) Here, Soltani is the one who allegedly breached duties, owed to Luxury and owed to Shayan and Cordona as their agent in setting up the escrow account. But again, plaintiffs have made no specific factual allegations that Soltani also acted as agent of the Brasher defendants, such that his alleged breach of duty to Shayan and Cordona could be attributed to the Brasher defendants.[5] Plaintiffs have not stated a cause of action for constructive fraud against the Brasher defendants.

The third cause of action alleges conspiracy to commit fraud. "As is well established, civil conspiracy is not an independent tort. [Citation.] Rather, civil conspiracy is a 'legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. [Citation.]' [Citation.] As Witkin explains, 'If [the plaintiff] can show that each [of several defendants] committed a wrongful act or some part of it, e.g., that each made false representations, he [or she] has no need of averments

---

[5]     Plaintiffs do allege John E. Brasher told both Paiman and Shayan "that [he] viewed them as friends and not as just business, . . . that he would make sure that the Rahbarians succeeded," "that the business dealings between Brasher's Auto Auction and the Rahbarians was not an arm's length transaction," and "that [he] would look out for the interests of the Rahbarian family, thus creating a fiduciary duty between himself and the Rahbarian family." Setting aside whether this is sufficient to allege a fiduciary relationship, with respect to the transfer of equity from the sale of Shayan and Cordona's house to Brasher's Auto Auction—the only transaction upon which plaintiffs have standing to sue—there are no factual allegations Soltani's action of transferring the equity is attributable to the Brasher defendants.

of conspiracy. But if A alone made representations, the plaintiff can hold B and C liable with A only by alleging and proving that A acted pursuant to an agreement (conspiracy) with B and C to defraud.' [Citation.] [¶] Accordingly, '[t]he basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act.' [Citations.] The conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose. [Citations.] [¶] However, actual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim. Knowledge of the planned tort must be combined with intent to aid in its commission. 'The sine qua non of a conspiratorial agreement is the knowledge on the part of the alleged conspirators of its unlawful objective and their intent to aid in achieving that objective.' [Citations.] 'This rule derives from the principle that a person is generally under no duty to take affirmative action to aid or protect others.' [Citation.]" (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1581-1582.)

Plaintiffs allege a "conspiracy among [the Brasher defendants] and Soltani to use [Luxury] to pay off [Soltani's] debts while allowing [Luxury's] debts to accumulate and earn interest for [Brasher's Auto Auction]," and that the Brasher defendants provided unspecified "assistance" to Soltani in using Luxury's bank accounts to pay off cars Soltani financed, while "simultaneously refus[ing] to cash checks that [Luxury] tendered for vehicles that it had financed." As we have previously concluded, to the extent these allegations are sufficient to state a conspiracy, the conspiracy was to defraud *Luxury*, not the plaintiffs individually. With respect to Soltani's alleged action of transferring the equity from the sale of Shayan and Cordona's house directly to Brasher's Auto Auction, there are no specific factual allegations the Brasher defendants (1) were aware Soltani intended to transfer this equity directly to Brasher's Auto Auction, and (2) intended to aid Soltani in doing so. Accordingly, as to the specific transaction upon which plaintiffs

24

have standing to sue, they have not stated a cause of action for civil conspiracy against the Brasher defendants.

## B.

### *Conversion and Unjust Enrichment*

Plaintiffs do not argue on appeal that the trial court erred in sustaining the Brasher defendants' demurrer to the fourth and tenth causes of action for conversion and unjust enrichment. Any such argument is therefore forfeited. (See *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177.)

## IV

### *Denial of Leave to Amend*

Finally, plaintiffs have failed to carry their burden of showing the trial court abused its discretion by sustaining the demurrer without leave to amend. Aside from a single line at the end of their argument disputing the trial court's statement that the bankruptcy judgments were not caused by the alleged misrepresentations, i.e., "If further pleading is required to clarify these claims involving the Bankruptcy Court judgments against plaintiffs, plaintiffs respectfully request leave to file an amended complaint," the opening brief contains no suggestion amendment would cure the above stated defects. Moreover, their belated attempt to do so in the reply brief is also inadequate, stating simply: "Plaintiffs' [third amended complaint] can be amended to make it clearer that the claims presented thereon belong solely to plaintiffs, and that none of those claims belong to Luxury, as the Trial Court has characterized them to be." Plaintiffs do not reveal what specific amendments would be made or how they would rectify their lack of standing or failure to sufficiently plead their fraud-based claims against the Brasher defendants. Having failed to carry their burden of showing how the third amended complaint might be further amended to avoid the defenses raised by the Brasher defendants, we must conclude there was no error in sustaining the demurrer without leave to amend. (See *Bergeron v. Boyd* (2014) 223 Cal.App.4th 877, 890.)

25

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to Brasher's Sacramento Auto Auction, Inc. and John E. Brasher.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


<u>        HOCH        </u>, J.


We concur:


<u>        BLEASE        </u>, Acting P. J.


<u>     NICHOLSON    </u>, J.